OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | : |
| | : No. 89-404 |
| of | : |
| | : OCTOBER 12, 1989 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| JACK R. WINKLER | : |
| Assistant Attorney General | : |
| | : |

THE CALIFORNIA STATE LOTTERY COMMISSION has requested an opinion on the following question:

Are unredeemed "3 of 6" Lotto prizes of California residents required to be transferred to the California State Lottery Education Fund?

CONCLUSION

Unredeemed "3 of 6" Lotto prizes of California residents are not required to be transferred to the California State Lottery Education Fund.

ANALYSIS

In the November 6, 1984 general election California voters adopted an initiative measure creating the state lottery. The initiative amended article IV, section 19 of the California Constitution to authorize a state lottery and adopted the California State Lottery Act of 1984 (The "Act"; Gov. Code, §§ 8880-8880.71[1]). The Act fixes limits on the kinds of games which may be established for the state lottery and regulates the disposition of the proceeds of all games. The Act creates the California State Lottery Commission ("Commission," § 8880.15) to govern the operation of the state lottery with the authority to promulgate rules and regulations specifying the types of games to be conducted. (§ 8880.28.)

One of the games authorized by the Commission is known as "California Lotto (6/49)". In this game a player selects six numbers (from 1 through 49) which are imprinted on the Lotto ticket which he or she purchases for one dollar from a "Retailer" who has contracted with the Commission to sell the tickets. A "drawing" is held periodically at which six numbers (from 1 through 49) are selected at random and announced to the public.

---

[1]Section references are to the Government Code unless otherwise indicated.

The Commission regulations provide that if a person has a Lotto ticket which has "3 of 6" numbers which are selected at the drawing the holder is entitled to a prize of $5.00.[2] The holder collects the prize by presenting the ticket to any Lotto Retailer. The Retailer verifies that the ticket is a winner through a computer terminal and pays the $5.00 to the person who presented the ticket. The Retailer is credited with the $5.00 prizes so paid out by a deduction from the money paid for Lotto tickets due the state lottery from the Retailer. A ticket holder must collect the prize within 180 days after the drawing or lose it. (See § 8880.32(e).) Many holders of winning "3 of 6" Lotto tickets do not collect their prizes within the 180 days allowed. Experience has shown that the amount of unredeemed "3 of 6" $5 prizes approximates $5 million a year. We are asked whether these unredeemed "3 of 6" prizes must be paid into the State Lottery Education Fund.[3]

The basic requirements for the distribution of proceeds of all games in the state lottery are set forth in section 8880.4 of the Act which provides:

"Section 8880.4  Allocation of revenues

"Not less than 84% of the total annual revenues from the sale of state lottery tickets or shares shall be returned to the public in the form of prizes and net revenues to benefit public education. 50% of the total annual revenues shall be returned to the public in the form of prizes as described in this Chapter and at least 34% shall be allocated to the benefit of public education as specified in section 8880.5. In addition, all unclaimed prize money shall revert to the benefit of public education as provided for in section 8880.32(e). No more than 16% of the total annual revenues shall be allocated for payment of expenses of the Lottery as described in this Chapter. To the extent that expenses of the Lottery are less than 16% of the total annual revenues, any surplus funds shall also be allocated to the benefit of public education as specified in section 8880.5."

Section 8880.4 requires a three way split of lottery revenues. The requirement that 50 percent of the total annual revenues be returned to the public in the form of prizes is clear and unambiguous. Equally clear is the requirement that at least 34 percent of the total annual revenues be allocated to the benefit of public education and that no more than 16 percent be allocated for lottery expenses.

---

[2]Half the money paid for Lotto tickets is placed in the prize pool. The Commission Lotto regulations apportions 17.65 percent of the prize pool to the payment of "3 of 6" winners and other fixed percentages to other categories of winners. Those regulations provide that the amounts so allocated to the other categories is divided equally among the winners of the category. Thus "4 of 6" winners may expect prizes in the order of $50; "5 of 6" winners $3,000; "5 of 6 with bonus number" winners $250,000; and "6 of 6" winners $2.8 million. If there are no winners in the category the percentage allocated to that category "rolls over", i.e. is added to the allocation for the "6 of 6" category in the next Lotto game. (See Rule 5 of California Lotto (6/49) Rules and Regulations.)

[3]Section 8880.5 provides in part:

"Allocation for education:

"The California State Lottery Education Fund is created within the State Treasury, and is continuously appropriated for carrying out the purposes of this chapter. . . ."

The third sentence of section 8880.4 would appear to answer the question presented. It provides: "In addition, all unclaimed prize money shall revert to the benefit of public education as provided in section 8880.32(e)."[4]  However, the third sentence in section 8880.32(e) states:

"If a valid claim is not made for a prize directly payable by the Lottery Commission within the period applicable for that prize, the unclaimed prize money shall revert to the benefit of the public purpose described in this chapter."

The Commission's California Lotto (6/49) Regulations (No. 7.b.) provide in part:

"To claim a prize of $99.00 or less, a claimant can either present the winning ticket to an authorized California LOTTO 6/49 retailer or submit the claim to the CSL [California State Lottery] for payment, except that a prize of $5.00 or less must be claimed only from an authorized CSL retailer, unless the claimant resides outside California.  In presenting the claim to a CSL retailer for payment, the claimant shall complete the information required on the back of the ticket.  The retailer must pay the claimant on a presented ticket for an individual prize of $99.00 or less, provided that all the ticket validation criteria as set forth in these rules have been satisfied, that the retailer terminal indicates an authorization to pay the prize, and that all other procedures required of a retailer by the CSL have been performed. . . ."

---

[4]Section 8880.32 provides in part:

"Section 8880.32  Validation and payment of prizes

"The Commission shall promulgate rules and regulations to establish a system of verifying the validity of prizes and to effect payment of such prizes, provided:

"(a) For convenience of the public, Lottery Game Retailers may be authorized by the Commission to pay winners of up to six hundred dollars ($600) after performing validation procedures on their premises appropriate to the Lottery Game involved.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The Commission may specify that winners of less than twenty-five dollars ($25) claim the prizes from either the same Lottery Game Retailer from whom it was purchased or from  the Lottery itself.

"(e) Players shall have the right to claim prize money for 180 days after the drawing or the end of the Lottery Game or play in which the prize was won.  The commission may define shorter time periods for eligibility for participation in, and entry into, drawings involving entries or finalists.  If a valid claim is not made for a prize directly payable by the Lottery Commission within the period applicable for that prize, the unclaimed prize money shall revert to the benefit of the public purpose described in this chapter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

Under this regulation a California resident[5] may collect a "3 of 6" Lotto 6/49 prize "only from an authorized CSL retailer" and may not collect it from the Commission. This means that the "3 of 6" $5.00 Lotto prizes of California residents are not "directly payable" by the California Lottery Commission within the meaning of section 8880.32(e). For that reason the requirement of that section that unclaimed prize money shall revert to public education does not apply to such prizes. Since the requirement of the third sentence of section 8880.4 is qualified by the provisions of section 8880.32(e) it does not apply to unredeemed "3 of 6" $5 Lotto prizes of California residents either.[6]

Since the applicability of the requirements of the third sentence of section of section 8880.4 and section 8880.32(e) depend upon the regulation quoted above we have examined the Act carefully to ascertain the Commission's authority to promulgate the same. Subdivisions (a) and (d) of section 8880.32 (footnote 4, supra) authorize the Commission to promulgate rules and regulations to authorize Retailers to pay lower value prizes. The authority in subdivision (d) is to authorize winners of prizes of less than $25 to claim the prize "from either the same Lottery Game Retailer from whom it was purchased or from the Lottery itself." Since the rule in question does not purport to authorize either of these alternatives it is clear that subdivision (d) does not authorize the rule. Subdivision (a) of section 8880.32 authorizes the Commission to authorize lottery game Retailers to pay winners of up to $600 after performing validation procedures appropriate to the lottery game involved. Unlike subdivision (e), subdivision (a) says nothing about an alternative of payment of such prizes by the Lottery itself. We believe subdivision (a) does authorize the Commission to adopt the rule in question, i.e. that winners of a $5 Lotto 6/49 prize may collect the prize only from an authorized California Lotto 6/49 Retailer and not from the Lottery itself. This means that the Commission is authorized to determine whether unredeemed prizes up to $600 revert to the education fund by exercising its statutory authority to adopt regulations providing whether or not such prizes are "directly payable" by the Commission.

Since neither the third sentence of section 8880.4 nor section 8880.32(e) require unredeemed "3 of 6" Lotto prizes of California residents to be paid into the Lottery Education Fund we return to the basic requirements of section 8880.4 to determine their appropriate disposition. The section limits their disposition to three categories, namely education, expenses or prizes. We believe

---

[5]Since the question presented is limited to prizes of California residents we do not address the matter of the disposition of unredeemed "3 of 6" Lotto prizes when the claimant resides out of California.

[6]Chapter 917, Statutes of 1989 (SB 906) will amend section 8880.32(e) to read:

"(e) Players shall have the right to claim prize money for 180 days after the drawing or the end of the Lottery Game or play in which the prize was won. The Commission may define shorter time periods for eligibility for participation in, and entry into, drawings involving entries or finalists. If a valid claim is not made for a prize directly payable by the Lottery Commission or for any Lotto prize within the period applicable for that prize, the unclaimed prize money shall revert to the benefit of the public purpose described in this chapter." (Emphasis added to indicate the words added.)

Since there is no urgency clause this statute will go into effect January 1, 1990. (See art. IV, § 8(c) of the Cal. Const.) The addition of the words underlined above will require an affirmative response to the question presented for any unredeemed Lotto prizes which accrue after the amendment becomes effective.

the Commission has the discretion to pay lottery revenues to any of those three categories so long as the requirements of section 8880.4 and other provisions of the Act are met.

To reiterate, section 8880.4 requires a three way split of lottery revenues in the following words: "50% of the total annual revenue shall be returned to the public in the form of prizes." "At least 34% shall be allocated to public education" and "no more than 16% shall be allocated for payment of expenses of the Lottery."

We note that the 50 percent for prizes requirement uses the words "shall be returned" while the other two requirements use the words "shall be allocated." This makes clear the voters' intent that 50 percent of the annual revenues were to be paid to the public as prizes and not just allocated for that purpose. The requirement of section 8880.63[7] that 50 percent of projected revenues from each lottery game "shall be apportioned" for payment of prizes is not inconsistent with and does not qualify the requirement of section 8880.4 that 50 percent of the total annual revenues be "returned" as prizes. These two statutes are harmonized readily as requiring both that 50 percent of projected revenues be apportioned for prizes (as nearly as practical) and that 50 percent of the total annual revenue be "returned" to the public in the form of prizes. While the wording of section 8880.63 equivocates in some degree by using such words as "projected" revenue and "as nearly as practical" there is no such equivocation in section 8880.4's requirement that "50% of the total annual revenues shall be returned to the public in the form of prizes."

In contrast to the requirement that a fixed percentage of the total annual revenue be returned to the public in the form of prizes, the required allocations for education and lottery expenses are not fixed. The 34 percent for education is a minimum ("at least") and the 16 percent for lottery expenses is a maximum ("not more than"). Since the amount for prizes is immutable at 50 percent it follows that to the extent that the amount allocated to education exceeds 34 percent the amount allocated to lottery expenses must be reduced by an equivalent amount.

We recognize that the requirements for the three way split of lottery revenues are expressed as percentages of the "total annual revenue." This means that the allocations and payments may vary somewhat from month to month within the fiscal year but the percentage requirements must be satisfied for the total annual revenue for the fiscal year. The reason for such flexibility is apparent. The allocations are based upon estimated expenditures and estimates are not always accurate. By making the statutory percentage requirements apply to total annual revenues, opportunity is afforded to the Commission to adjust allocations and payments of revenues from time to time within the year so the percentage requirements for allocating total annual revenue for the fiscal year may be satisfied.

Applying the statutory requirements for allocation of lottery revenues to the question presented we start with section 8880.63's requirement that as near as practical, 50 percent of the total projected revenue from the sale of Lotto 6/49 tickets is apportioned for payment of prizes. The question informs us that some of the money so apportioned for prizes will not be paid out because many winners of "3 of 6" prizes simply do not claim their prizes within the 180 days allowed. We

---

[7]Section 8880.63 provides:

"Section 8880.63  Prize payments

"As nearly as practical, 50% of the total projected revenue, computed on a year-round basis for each lottery game, accruing from the sales of all lottery tickets or shares from that lottery game shall be apportioned for payment of prizes."

have already concluded that the statutory requirements to transfer these unclaimed prizes to the education fund are not applicable. However, the requirements for allocation of total annual revenues, including the requirement that 50 percent must be "returned" to the public in the form of prizes, do remain applicable. The 50 percent requirement would be satisfied by adding the unredeemed "3 of 6" Lotto prizes to the prize pools of other Lotto games. Should the amount allocated for prizes be reduced by the amount of unredeemed "3 of 6" prizes by a transfer to something other than the payment of prizes, the amount returned to the people as prizes in the game will fall below 50 percent of the game's revenue by the amount so transferred. This means that at some time within the fiscal year the Commission must increase the prizes paid to the public by a like amount in other games so the requirement that 50 percent of total annual revenue be returned to the public in the form of prizes is satisfied. Since the 34 percent allocation for education is a minimum it cannot be reduced to make up the deficiency for prizes. Thus the only source available to restore the deficiency for prizes would be the allocation for expenses of the lottery.

We conclude that until chapter 917, Statutes of 1989, becomes effective the Commission may lawfully transfer funds allocated for the payment of "3 of 6" Lotto prizes which are unredeemed to pay other prizes or lottery expenses or to the California State Lottery Education Fund provided the requirements of section 8880.4 and other provision of the Act are satisfied.

\* \* \* \* \*